**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO.  07-00022-001 (RJL)** |
| | **:** | |
| | **:** | |
| **JOHN DIFAZIO** | **:** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of Sentencing.  For the reasons set forth herein, the government respectfully recommends that the Court sentence the defendant to a period of incarceration at the low end of the United States Sentencing Guidelines range of 57 to 71 months of incarceration.

## I.    BACKGROUND

On March 21, 2007, John E. DiFazio pled guilty to Certain Activities Relating to Material Constituting or Containing Child Pornography, in violation of Title 18, United States Code, Sections 2252A (a)(5).  As part of his plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

Beginning on or about February 23, 2005, Mr. DiFazio communicated by e-mail from his work computer located at 900 17th Street, N.W., Suite 300, Washington, D.C., to an undercover United States Postal Inspector (the "UC") who had advertised "home made movies of real school girls" on a website devoted to child actress Dakota Fanning.  After an exchange of emails, Mr. DiFazio ultimately ordered a DVD described to Mr. DiFazio as containing sexually explicit conduct between three minor girls with a minor boy and an adult male.  Mr. DiFazio ordered the

DVD by mailing $20 in U.S. currency on February 24, 2005, to a post office box in Maine as instructed by the UC in an email. The UC received Mr. DiFazio's order for the DVD on or about February 28, 2005.

Following that date, United States Postal Inspectors created a DVD that contained images seized by law enforcement in a prior investigation and that fitted the description of what the defendant ordered in this case, and prepared a controlled delivery of that DVD to the defendant at his work place. The DVD contained sexually explicit conduct including but not limited to, fellatio between a preteen boy and girls, masturbation among preteen boys and girls, sexual intercourse between an adult and a preteen girl, and sexual intercourse between preteens. The Express Mail package was affixed with an address of "John DiFazio, 900 17th Street, N.W., Suite 300, Washington, D.C. 20006," a return address of "Sam M., P.O. Box 184 Stetson, Maine, 04488" along with postage and a cancelled postmark. On or about March 5, 2005, the package was mailed from the United States Postal Inspection Service in Cleveland, Ohio, to the United States Postal Inspection Service in Merrifield, Virginia. It was received by a Postal Inspector in Merrifield, Virginia, on or about March 7, 2005. Thereafter, on or about March 23, 2005, a United States Postal Inspector dressed as a United States Mail carrier delivered the Express Mail package to Mr. DiFazio at 900 17th Street, N.W., Suite 300, Washington, D.C. The Inspector asked for Mr. DiFazio by name, and delivered the package directly to the defendant, who signed for it.

Approximately twenty minutes after Mr. DiFazio's receipt of the Express Mail package, Federal Agents conducted a search of his workspace at 900 17th Street, N.W., Suite 300, pursuant to an anticipatory search warrant. Found on Mr. DiFazio's desk was the Express Mail package

for which he had just signed.  The package was opened.  Further, Federal Agents found in Mr.

DiFazio's office at least 458 images of child pornography[1], 77 of which appear on paper found in

his workspace, and 381 of which had been saved to Mr. DiFazio's hard-drive.  These images

were sent to a staff analyst of the National Center for Missing and Exploited Children for

identification and assessment purposes.  The staff analyst reviewed the material seized from Mr.

DiFazio's office, and determined that at least 62 of those images contained known child victims,

that is, depicted real children.  Among the images of child pornography possessed by Mr.

DiFazio were at least 350 that involved a prepubescent minor or a minor who had not attained

the age of 12 years of which 62 images were of known child victims.  Among the previously

identified images saved on Mr. DiFazio's hard drive, was a sado-masochistic image of a six-year-

old girl, and known child victim, displaying her genitals with the word "slut" written in red color

across her naked chest.   The sexual abuse and sexually explicit photography of the six-year-old

girl occurred in North Carloina.

Mr. DiFazio possessed these images of child pornography knowingly and on purpose, not

by accident or mistake.  On March 23, 2005, Mr. DiFazio voluntarily told Postal Inspectors that

he had received the DVD and that he knew it was supposed to contain child pornography,

although he had not yet looked at before it was seized.  He told the Inspectors that he used his

---

[1]  The government explicitly agreed at ¶ 3 of the Plea Agreement that it would not seek any increase of the defendant's offense level other than those to which he agreed in ¶ 2 of the Plea Agreement.  Based on a <u>total</u> offense level of 25, as agreed in ¶ 2 of the Plea Agreement, and a criminal history category of I, the guideline range for imprisonment is 57 to 71 months (this calculation includes points for Acceptance of Responsibility).  According to the PSR at ¶ 60, however, the guideline range for imprisonment is 63 to 78 months based on a total offense level of 26 and a criminal history category of I.  The PSR total offense level is 26, rather than 25, because the defendant actually possessed more than 300 sexually explicit images of prepubescent children.

office computer to order the DVD and to acquire other images over the Internet which he then saved on his computer, downloaded onto compact disks or printed out and kept in various locations in his office.  Mr. DiFazio told the Inspectors that he had images of child pornography on his desk top computer in the C: drive in a folder called "My Videos."  During the search of Mr. DiFazio's office, Inspectors found child pornography in this location on his office computer. Mr. DiFazio also informed the Inspectors that he kept printed images of child pornography in his office, which he had retrieved from the Internet, in a large envelope between two stacks of paper in his file cabinet, on compact disks in an envelope, in the third drawer of his credenza, and in his briefcase.  During the search of Mr. DiFazio's office,  Inspectors found child pornography in each of these locations.  When the Agents showed Mr. DiFazio some of the images found in his office on March 23, 2005, he acknowledged that they belonged to him.

Mr. DiFazio also voluntarily provided the Inspectors with a hand-written statement, setting forth his correspondence with the UC, and recounting that the UC had offered descriptions of several DVDs.  In his statement, Mr. DiFazio said the description of the DVD he selected to purchase was of children aged approximately 8, 9 and 12 and an adult all engaging in explicit sexual activity.  Mr. DiFazio admitted he mailed cash to pay for this DVD, and that he received an Express Mail package containing the DVD that day.

## II.    SENTENCING CALCULATION

### A.    Statutory Minimum/Maximum

The maximum term of imprisonment for the charge of Certain Activities Relating to Material Constituting or Containing Child Pornography, in violation of Title 18, United States Code, Sections 2252A (a)(5) is 10 years of confinement and a $250,000 fine.

B.    United States Sentencing Guidelines Calculation

According to the Pre-Sentence Investigation Report (PSR) prepared by the United States Probation Office, Mr. DiFazio has no criminal history and, therefore, he falls in a Criminal History Category I under the United States Sentencing Guidelines.  The PSR also states that Mr. DiFazio's Total Offense Level under the Sentencing Guidelines is 26.  Based on a total offense level of 26 and a criminal history category of I, the guideline range for imprisonment is 63 to 78 months.  PSR, ¶ 60.

The defendant agreed to the following in the plea agreement: i.) possessing material involving prepubescent minor children; ii.) possession of between 10 and 150 images involving sexual exploitation of a minor; iii.) using a computer to possess or receive these images; iv.) and to possession of material depicting sadistic or masochistic conduct against children.  Plea Agreement, 8/8/2006, ¶ 2.  Based on a total offense level of 25 and a criminal history category of I, the guideline range for imprisonment is 57 to 71 months, if the Court imposed a guideline sentence upon the defendant, in accordance with the agreement between the parties.

Under calculation of the Guidelines by either the parties or the PSR writer, the applicable Guidelines range is in Zone D of the Sentencing Table.  Therefore, the defendant would  not be eligible for probation.  See USSG § 5B1.1, Comment n. 2, and USSG § 5C1.1(f).

III.    **GOVERNMENT'S RECOMMENDATIONS**

A.    Acceptance of Responsibility

The government agrees that the Defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines.  He admitted to Postal Inspectors, entered a guilty plea admitting the conduct comprising the offense, and he has apparently cooperated

in the pre-sentence investigation. Accordingly, the government is moving the Court to grant a three-level decrease in the offense level pursuant to § 3E1.1 of the Sentencing Guidelines.

      B.     Application of the Federal Guidelines post-Booker

The Court should impose a sentence at the low end of the Guidelines range. In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. <u>See</u> 18 U.S.C. Section 3553(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." <u>Id.</u> at 769.

"The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. A sentence within the Guideline range is reasonable in this case because it would help

further the goals articulated in 18 United States Code, Section 3553(a) such as "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

    C.    <u>Basis for Government's Sentencing Recommendation</u>

The Government recommends that the Court sentence the defendant at the low end of the Guidelines range of 57-71 months.  Such a sentence would be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.

    1.    <u>Seriousness of the offense</u>

Based on the seriousness of the offense, the Eight Circuit reversed a district court's decision to sentence a defendant to 12 months plus one day for possession of child pornography despite a guideline range of 46 to 57 months.  In <u>U.S. v. Karl Grinbergs</u>, 470 F. 3d 758 (Dec. 12, 2006), the Eighth Circuit reiterated the Supreme Court holding in <u>Osborne v. Ohio</u>, 495 U.S. 103, 109 (1990), that the United States has a *compelling interest* in outlawing possession of child pornography to destroy the market for child pornography.  In addition, the appellate court discarded the argument that a sentence for possession child pornography substantially below the guideline range was justified because the defendant did not commit any crimes other than possession of child pornography – e.g. a contact offense and/or production offense.[2]

---

[2]  The court of appeals rejected defendant's argument of never engaging in sexual activity with children, never producing child pornography, that he would likely not become a predator in the future, and progress he has made in therapy holding those reasons fell short of providing

The nature and circumstances of this offense is serious.  The defendant is a consumer of child pornography.  Consumers of child pornography fuels the market for production of child pornography.  This has a major victim impact.  Child pornography is a photo-documentation of a felony in progress.  The children in the images are being sexually assaulted and/or exploited while the photographs are being taken and are being exploited each time an image is viewed, downloaded, printed, or sent to another person, as this further perpetuates the abuse.  Many of the children portrayed in the images are aware that photographs are being taken and some are also aware that they are being sent over the Internet.  These children live with the daily knowledge that hundreds, if not thousands of people around the world are being sexually aroused by viewing images of their humiliation and felonious assaults.  The consumer or recipient is responsible for causing the children to suffer as a result of his actions because: (1) dissemination of child pornography perpetuates the abuse; (2) the receiver directly continues the victimization of the child; (3) the very existence of each pornographic image of a child is an invasion of the privacy of that child, and (4) the consumer instigates the production and distribution of the images.

This offense involved the defendant purposefully receiving and possessing, for his pleasure, images of children being sexually abused and/or exploited.  The defendant possessed over 300 images of documented felonies in progress.  Indeed, some of the victims depicted in images possessed by the defendant have provided victim impact statements in writing.  The government will also present to this Court live testimony by one of the actual victims of Mr. DiFazio's possession  who does not wish to reduce her statement to writing.

---

justification required for a departure of this degree.  Id.

If this case had gone to trial, the government would have proven through expert testimony that the images stored on the defendant's personal computer and in his work space depicted real images of children, including the identification of known victims depicted in these still images. Indeed, according to the National Center for Missing and Exploited Children (NCMC), at least 62 of the images depicted in the collection found in the defendant's possession contained known child victims. Based on the victim impact alone, this offense is very serious.

2.     <u>Promote respect for the law and afford adequate deterrence to criminal conduct</u>

In <u>United States v. Jeremy Goldberg</u>, 491 F. 3d 668 (June 27, 2007) a child pornography possession case, the Seventh Circuit reversed the district court's decision to sentence a defendant to one-day imprisonment where the low-end of the advisory range was 63 months. Amongst other things, the Court stressed the need for deterrence and afford adequate respect for the law in the following quotes:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced.

> Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

> When the guidelines, drafted by a respected public body with access to the best knowledge and practices of penology, recommend that a defendant be sentenced to a number of years in prison, a sentence involving no (or, as in this case, nominal) imprisonment can be justified only by a careful, impartial weighing of the statutory sentencing factors. It may not be based on idiosyncratic penological

views (such as that the severity of criminal punishment has no significance for the victims of crime, but only for the criminals), disagreement with congressional policy, or weighting criminals' interests more heavily than those of victims and potential victims.

The judge neglected considerations of deterrence and desert, which dominate the federal criminal code, in favor of undue emphasis on rehabilitation, and seemed even to think that any prison sentence, however short, is inconsistent with rehabilitation. Id.

In order to fulfill the compelling interest of outlawing possession and receipt of child pornography for the reasons stated herein, it is necessary that the sentence have a deterrent effect. The defendant is educated, and according to his psychological examination report, exceedingly intelligent. As an intelligent man who is subject to the same laws as similar offenders, he will likely think twice before every engaging in any activities relating to child pornography in the future, if incarcerated. Provision of a sentence less than one recommended by Congress could provide reason to believe that he, being so intelligent, could get away with the same behavior in the future, and instill a lack of respect for the law. The government urges this Court to provide just punishment for this offense against the most helpless of all victims in society, children.

3.    <u>Protect the public from further crimes of the defendant</u>

The defendant's Psycho Sexual Risk Assessment conducted on July 14, 2007 by Dr. Stephanie Hardenburg of the Counseling and Forensic Services, Inc. states that the defendant is considered to be within a low to average range for risk of re-offense. The government notes that Mr. DiFazio's examination lasted a total of <u>only</u> two hours. In addition, the sources of information that served as a foundation for the report are all of self report (came from the defendant). Moreover, the assessments used to determine Mr. DiFazio's likelihood of recidivism was based on actuarial assessments, "measures not normed on those committing Internet crimes."

pg. 7 ¶ 2. The Association for the Treatment of Sexual Abusers Practice Standards and Guidelines for the Evaluation, and Treatment, and Management of Adult Male Sexual Abusers highly recommend the need for corroboration of the self report to avoid conclusions based solely on limiting client self report. With no corroboration, i.e. polygraph test, interviews with collateral informants, measures of sexual preference, relevant psychometric testing, review of official documents including criminal justice records, witness statements, polygraph reports, etc., the government urges this court to accept the assessment as Dr. Hardenberg states, "with caution." pg. 6, last ¶.

Defendants suspected of child pornography offenses pose a danger to society because of the potential connection between viewing child pornography and acting on those impulses. Those who possess and use child pornography become desensitized and eventually view the depictions in the pornography as acceptable behavior, which gives them permission to carry out their desires as the behavior escalates from merely viewing to finally acting. Dr. Victor B. Cline, Pornography's Effects on Adults & Children, *Morality In Media*, 12 * 4 (2001). The nature of these crimes involve addiction, which leads to escalation and a need to act out. More importantly, even after pedophiles have been caught and reprimanded, courts have found it is common for them to "continue their aberrant conduct even in the face of warnings." United States v. Cocco, 604 F.Supp.1063 (M.D.P.A. 1985). "These offenders target children in cyberspace in a similar manner as offenders who prey on children in their neighborhood or nearby park. They seek vulnerable children, gradually groom them, and eventually contact them to perpetrate sexual abuse." Andres E. Hernandez, Self-Reported Contact Sexual Offenses by Participants in the Federal Bureau of Prisons' Sex Offender Treatment Program: *Implications for*

*Internet Sex Offenders*, page 1, (2000).

The defendant stated that he continues to have access to the internet. Given the addictive, dangerousness, and grave nature of this offense, it is paramount that the Court protect society from future crimes of the defendant

4. <u>Avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct</u>

Mr. DiFazio possessed the worse form of child pornography for his personal pleasure: images of children in bondage, sadistic and masochistic images; images of small children being penetrated vaginally and anal by adult male penises, images of small children with their mouths on adult male penises, images of adult men with semen dripping into small children's mouths, etc. These children are made to smile or look into the camera. Mr. DiFazio's "unblemished criminal record and potentially a low risk of recidivism are not valid grounds for a downward departure because those factors are all taken into account in the guidelines themselves." <u>U.S. v. Goldberg</u>, 295 F. 3d 1133 (10th Cir 2002). In addition, those factors were taken into account in the plea agreement.

D. <u>A guideline sentence is lenient</u>

The defendant has already received a substantial benefit for his early acceptance of responsibility. Specifically, the defendant actually engaged in conduct that amounts to an offense (receipt of child pornography) that carries a statutorily mandatory minimum number of years of imprisonment, but the government accepted his agreement to plea to a lesser offense in light of his background. The government accepted the defendant's guilty plea to possession of half the number of images actually found in his possession, based on his background. The government

agreed to allocate for a sentence at the low end of the guidelines, based on the defendant's

background.  The government agreed not to allocate for any additional enhancement picked up

by the PSR writer.  The government moves this court to give three points for acceptance of

responsibility.  Accordingly, the defendant has already received all the leniency he should under

the plea.   Sentencing the defendant at the low end of the Guidelines range would serve the

interests of the community and give both the government and the defendant the benefit of the

bargain negotiated.

## V.  CONCLUSION

For the foregoing reasons, the government urges this Court to sentence the defendant to

57 months of incarceration with the conditions of release recommended by the PSR.

Respectfully,

JEFFERY A. TAYLOR
UNITED STATES ATTORNEY
D.C. BAR

_____

Angela Hart-Edwards
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.  #4241
Washington, DC 20001
Phone: 307-0031; Fax: 514-6010
Pa. Bar

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney
for the defendant, Whitney Ellerman, Esquire, this 13th day of September, 2007 by electronic mail
via court filing.

_____

Angela Hart-Edwards
Assistant United States Attorney